NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JOHNNIE ALLEN BROWN, III,          )
DOC #372667,                       )
                                   )
          Appellant,               )
                                   )
v.                                 )          Case No. 2D16-2592
                                   )
STATE OF FLORIDA,                  )
                                   )
          Appellee.                )
_____)

Opinion filed May 26, 2017.

Appeal from the Circuit Court for Polk
County; J. Dale Durrance, Judge.

Howard L. Dimmig, II, Public Defender,
and Robert D. Rosen, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Susan D. Dunlevy,
Assistant Attorney General, Tampa, for
Appellee.


WALLACE, Judge.

          Johnnie Allen Brown, III, challenges his judgment and sentence imposed

after a jury returned a verdict finding him guilty of felony battery based on a second or

subsequent offense, a violation of section 784.03(2), Florida Statutes (2015).  Mr.

Brown admitted striking the victim but claimed that he acted in self-defense.  Because

the trial court erred in excluding Mr. Brown's proffered testimony concerning his knowledge of specific acts of violence by the victim and his knowledge of her reputation in the community for violence, we reverse the judgment and sentence and remand for a new trial.

## I.  THE FACTS

The incident that gave rise to the charge occurred on January 6, 2016. Mr. Brown and the victim had previously enjoyed a romantic relationship, but that relationship had ended before the events in question.  The victim testified that after an argument with Mr. Brown at his residence, she was preparing to leave and had gone inside to say goodbye to their dog.  But before she was able to react, Mr. Brown was on top of her and began hitting her.  She testified that Mr. Brown hit her three times; he finally stopped when the dog bit him.  The victim denied that she was carrying a knife or a razor.

Mr. Brown took the stand in his own defense.  He did not deny hitting the victim, but his version of the events leading up to the fracas was substantially different from hers.  According to Mr. Brown, the victim was angry with him because she believed that he had been "slandering" her.  Mr. Brown explained to the victim that someone had misconstrued his remarks.  With that, the victim went into his residence and began taking things from his nightstand and throwing them into her purse and backpack. When Mr. Brown followed the victim into the residence and asked her what she was doing, the victim stood up and replied, "I'm going to tell you what I'm going to do."  Mr. Brown testified that upon hearing the victim's reply he saw an X-Acto knife in her hand,

became scared, and "flipped out." It was only after Mr. Brown heard the victim's threat and saw the knife in her hand that he "flipped out" and began hitting the victim.

At this point in Mr. Brown's testimony, defense counsel attempted to elicit testimony from Mr. Brown regarding his knowledge of specific acts of violence by the victim and her reputation in the community for violence. The prosecutor promptly objected that such evidence was inadmissible because it amounted to an improper attack on the victim's character. The prosecutor also argued that such evidence was inadmissible because Mr. Brown had already established his self-defense claim with his testimony about the victim's threat and the act of brandishing the X-Acto knife. Defense counsel responded that the evidence was admissible to show that Mr. Brown had a reasonable apprehension of acts of violence at the hands of the victim. After these initial arguments, defense counsel proffered Mr. Brown's testimony concerning his knowledge of both specific prior acts of violence by the victim and her reputation in the community for violence. Further argument by counsel followed the proffer. After considering the parties' arguments, the trial court ruled that it would exclude the proffered testimony because it amounted to an attack on the victim's character. The trial court also reasoned that because Mr. Brown had already established his claim of self-defense with his testimony about the victim's threat and the brandishing of the knife, the proffered testimony was "irrelevant, immaterial, and inappropriate."

When the direct examination of Mr. Brown resumed, he testified that he had struck the victim because he was scared and was trying to get away from her. During closing argument, defense counsel argued for a not guilty verdict on the theory that Mr. Brown had acted in self-defense. The jury rejected the self-defense claim and

returned a verdict finding Mr. Brown guilty as charged. The trial court sentenced him to ten years in prison as a habitual felony offender. This appeal followed.

## II. DISCUSSION

"Admission of evidence is within the discretion of the trial court and will not be reversed unless there has been a clear abuse of that discretion." Ray v. State, 755 So. 2d 604, 610 (Fla. 2000). In general, evidence concerning a victim's character is inadmissible. Grace v. State, 832 So. 2d 224, 226 (Fla. 2d DCA 2002). However, in cases where a claim of self-defense is raised,

> evidence of the victim's reputation is admissible to disclose his or her propensity for violence and the likelihood that the victim was the aggressor, while evidence of prior specific acts of violence by the victim is admissible to reveal the reasonableness of the defendant's apprehension at the time of the incident.

Smith v. State, 661 So. 2d 358, 361 (Fla. 1st DCA 1995) (quoting Smith v. State, 606 So. 2d 641, 642-43 (Fla. 1st DCA 1992)); see also Grace, 832 So. 2d at 226. In fact, when self-defense is a defendant's only defense, "it may be prejudicial error to exclude competent evidence supporting that defense." Mohler v. State, 165 So. 3d 773, 775 (Fla. 2d DCA 2015).

To introduce evidence of a victim's character, the defendant "must show some overt act by the victim at or about the time of the incident which reasonably indicated to the defendant a need to take some action in self-defense." Smith, 661 So. 2d at 361. Indeed, "if there is the slightest evidence of an overt act by the victim which may be reasonably regarded as placing the defendant in imminent danger, all doubts as to the admission of self-defense evidence must be resolved in favor of the accused." Id. (alteration omitted) (quoting Smith, 606 So. 2d at 643). In addition to showing some

overt act, "[t]here must also be evidence that the defendant knew of the [victim's] specific acts of violence." Grace, 832 So. 2d at 226. Further, "[w]hile reputation evidence may be offered to corroborate the defendant's testimony by showing the victim's propensity toward violence, specific act evidence is only admissible to prove the reasonableness of the defendant's apprehension." Id.; see also Antoine v. State, 138 So. 3d 1064, 1075 (Fla. 4th DCA 2014) (stating that reputation evidence may be admissible to show a victim's "propensity for violence and the likelihood that the victim was the aggressor" (quoting Berrios v. State, 781 So. 2d 455, 458 (Fla. 4th DCA 2001))).

In this case, Mr. Brown established a sufficient predicate for the admission of his proffered testimony regarding his knowledge of the victim's reputation for violence and specific acts of violence. Mr. Brown testified that the victim was angry with him because she believed that he had been "slandering" her. In Mr. Brown's account of the incident, the victim went into his residence and began taking some of his possessions. When he approached her, the victim stood up brandishing an X-Acto knife and announced, "I'm going to tell you what I'm going to do." Evidence regarding these acts was sufficient to raise a reasonable apprehension of the need for self-defense. See Grace, 832 So. 2d at 226-27 (holding that the trial court erred in excluding testimony regarding prior specific acts of violence because the defendant offered evidence of an overt act by the victim that would reasonably suggest the need for self-defense, i.e., picking up a beer bottle and threatening to hit the defendant with it); Burk v. State, 497 So. 2d 731, 733 (Fla. 2d DCA 1986) (holding that the trial court erred in preventing the defendant from testifying about his knowledge of the victim's reputation for violence

because the defendant had sufficiently established that an issue existed regarding whether he reasonably believed he was in imminent danger from the victim); Smith, 661 So. 2d at 361 (holding that the trial court erred in excluding testimony regarding the victim's prior specific acts of violence because there was an overt act to suggest the reasonableness of the defendant's fear and his need to act in self-defense, i.e., the victim's approach toward the defendant with a knife); see also Hedges v. State, 667 So. 2d 420, 423 (Fla. 1st DCA 1996) (reaching a similar conclusion); Sanchez v. State, 445 So. 2d 1, 2 (Fla. 3d DCA 1984) (same).  For these reasons, we conclude that the trial court erred in excluding the proffered testimony.

The State argues that any error in excluding the proffered testimony was harmless error.  We disagree.  Mr. Brown and the victim were the only witnesses to the incident.  Thus, this was essentially a "he said, she said" case.  Moreover, the trial court's ruling deprived Mr. Brown of evidence that was important, if not critical, to establishing his defense.  Under these circumstances, the State cannot satisfy its burden of showing that there is no reasonable possibility that the error contributed to the conviction.  See State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986).

For the foregoing reasons, we reverse Mr. Brown's judgment and sentence and remand for a new trial.

Reversed and remanded.


SILBERMAN and BADALAMENTI, JJ., Concur.